## Ex parte DILLIN.

### (Circuit Court, M. D. Tennessee. April 14, 1908.)

UNITED STATES—DEFAULTING OFFICERS—IMPRISONMENT—STATUTES—CONSTRUCTION.

> Rev. St. § 3625 (U. S. Comp. St. 1901, p. 2418), provides that whenever any collector of the revenue, receiver of public money or other officer who has received the public money before it is paid into the treasury of the United States, fails to render his account or pay over the same, as required by law, a distress warrant shall be issued against the officer and his sureties, which section 3627 provides shall be levied on the officer's property, and if the same is insufficient to satisfy the warrant it may be levied on the officer's person, who may be committed to prison, there to remain until discharged by due course of law. *Held*, that such act was applicable only to persons holding office under the government at the time the writ was issued, and that a defaulting officer could not be imprisoned thereunder, where his government service had terminated prior to the issuance of the writ.

Frank P. Bond and John R. Aust, for petitioner.

A. M. Tillman, U. S. Dist. Atty., and Lee Brock, Asst. U. S. Dist. Atty.

McCALL, District Judge. Joseph W. Dillin, the petitioner in this application for a writ of habeas corpus was the surveyor of customs for the Port of Nashville, Tenn., for several years prior to June 30, 1907. At that date his term of office expired, and his successor qualified and took charge of the office. As a result of an examination made of Dillin's accounts in September, 1907, it was ascertained that he was indebted to the government in the sum of $6,898.32, as is shown by a letter of date of September 25, 1907, of W. Andrews, auditor, addressed to the Secretary of the Treasury. It further ap-

pears that, at the October term of this court, the said Joseph W. Dillin was indicted for embezzling funds of the government that came into his hands as collector of the port at Nashville. The defendant was arrested and gave bond for his appearance at the October term of this court. The case was continued until the present term.

It further appears that on March 31, 1908, under and by virtue of section 3625 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2418), Maurice D. O'Connell, as Solicitor of the Treasury, issued a writ directed to John W. Overall, Esq., U. S. marshal for the Middle District of Tennessee, reciting that the "said Dillin, late surveyor of customs of the Port of Nashville, in the state of Tennessee, stands indebted to the United States in the sum of $6,502.30, agreeably to the settlement of his account made by the proper accounting officer of the Treasury," and that "the said Joseph W. Dillin, having failed to pay over the said sum of $6,502.30," the said U. S. marshal, in pursuance of section 3625 of the Revised Statutes of the United States, is commanded to proceed immediately to levy and collect the said sum of $6,502.30, by distress and sale of the goods and chattels of the said Dillin, giving 10 days' previous notice of said intended sale at two or more public places in the town or county where such goods and chattels may be taken, or in the town or county where the owner of said goods and chattels may reside, and if there should not be found sufficient goods and chattels to satisfy said sum, the marshal is commanded to commit the body of Joseph W. Dillin to prison, there to remain until discharged by due process of law.

There is no return of the execution of this writ indorsed upon it, but the petition for writ of habeas corpus, filed by said Dillin, alleges that under and by virtue of said writ said Overall has arrested him, and he is now incarcerated in the jail of the county of Davidson, at Nashville, Tenn., and is illegally restrained of his liberty, and prays that the writ of habeas corpus issue to bring him before this court that the legality of his imprisonment may be inquired into, and that he be set at liberty. First, because, as he alleges, he is not now, and was not at the time of the issuance of said process and the service of same, an officer of the United States government, and did not hold the position of collector of moneys, or any other position under the government; second, he alleges that at the October term of the United States Circuit Court of the Middle District of Tennessee he was indicted, and under which indictment he was arrested and gave bond for his appearance before said court at its ensuing term, and that said court now has petitioner in its exclusive custody and jurisdiction, charged with a crime. He further alleges that he is and has been under the exclusive custody and jurisdiction of said court since his said arrest in October, 1907, and that the process now in the hands of said John W. Overall, United States marshal, was issued by the Solicitor of the Treasury of the United States on the 31st day of March, 1908.

Upon this petition a writ was issued, directed to the marshal of the United States for the Middle District of Tennessee, commanding him to have the body of said Dillin before the Circuit Court of the United States for the Middle District of Tennessee, at the Custom House, in

the United States circuit court room at Nashville, Tenn., at 2 o'clock p. m., on the 13th day of April, 1908, to be dealt with according to law. In obedience to said writ, the said marshal produced the body of said Dillin at the time and place designated in said writ, together with his return, by which it is shown that said Dillin was seized and was imprisoned in pursuance of the writ issued March 31, 1908, by the said Solicitor of the Treasury, herein above referred to. The case has been elaborately and ably argued by the United States District Attorney for the government, as well as by counsel for petitioner.

The sections of the Revised Statutes under which this proceeding is had provide as follows:

"Sec. 3625. Whenever any collector of the revenue, receiver of public money, or other officer who has received the public money before it is paid into the Treasury of the United States, fails to render his account, or pay over the same in the manner or within the time required by law, it shall be the duty of the First Comptroller of the Treasury (or the Commissioner of Customs, as the case may be,) to cause to be stated the account of such officer, exhibiting truly the amount due to the United States, and to certify the same to the Solicitor of the Treasury, who shall issue a warrant of distress against the delinquent officer and his sureties, directed to the marshal of the district in which such officer and his sureties reside. Where the officer and his sureties reside in different districts, or where they, or either of them, reside in a district other than that in which the estate of either may be, which it is intended to take and sell, then such warrant shall be directed to the marshals of such districts respectively."

"Sec. 3627. The marshal authorized to execute any warrant of distress shall, by himself or by his deputy, proceed to levy and collect the sum remaining due, by distress and sale of the goods and chattels of such delinquent officers; having given ten days' previous notice of such intended sale, by affixing an advertisement of the articles to be sold at two or more public places in the town or county where the goods or chattels were taken or in the town or county where the owner of such goods may reside. If the goods and chattels be not sufficient to satisfy the warrant, the same may be levied upon the person of such officer, who may be committed to prison, there to remain until discharged by due course of law."

To the present generation, this proceeding is a novel one. It is most extraordinary and drastic, and the statute authorizing it seems long since to have fallen into innocuous desuetude. If it is ever permissible to presume that a statute is repealed by long-continued disuse or failure to enforce it, this would appear to be a proper case for the indulgence of such presumption. I am unable to divine any reason why it has not before been resorted to within the last three-quarters of a century in cases similar to the one under consideration, unless it be for the reason that the opinion in the case of Ex parte Randolph (presently to be noticed) was considered to have practically annulled it in such cases. I am inclined to think that that is true. No case arising under these sections has been before the courts, so far as I am advised, since 1855. That was the case of John Den v. Hoboken Land Co., 18 How. 272, 15 L. Ed. 372, in which the constitutionality of the law was attacked. The Supreme Court of the United States sustained its constitutionality. In that case, however, the question of imprisonment did not arise, but it was a case in which the validity of the title to land sold under the proceeding provided for by the sections above quoted, was before the court. It was held that a distress

warrant, issued by the Solicitor of the Treasury, under the act of May 15, 1820, c. 107, § 2, 3 Stat. 592 (U. S. Comp. St. 1901, p. 2418), carried into the United States Statutes at section 3625 et seq. against a delinquent collector, is not in conflict with the Constitution, but is due process of law. The next case prior to the Den Case, arising under these statutes—the case of U. S. v. Nourse, 9 Pet. 8, 9 L. Ed. 31—was in 1835. The next preceding case was Ex parte Randolph, 1833. The last case referred to is reported in 20 Fed. Cas. No. 11,558, and was heard before Chief Justice Marshall, sitting in the Circuit Court with Judge Barbour, District Judge.

In discussing these sections, Chief Justice Marshall held that they must be strictly construed; that the officers of the government cannot act under these sections on other persons or on other subjects than those specifically pointed out therein, nor can they proceed in manner different from that it prescribes, and he adds:

"It may be said with confidence that the Legislature has not passed any act which in its construction is to be more strictly confined to its letter. By this rule its words will be examined."

The first cause assigned by the petitioner, Dillin, why he should not be restrained of his liberty under these sections, is that he is not now, and was not at the time of the issuance of the process, and the service thereof, an officer of the United States government, and did not hold the position of collector of moneys or any other position under the government, and therefore is not one of the persons on whom the law was designed to operate. The language of section 3625, in describing those upon whom this law is intended to operate, is:

"Any collector of the revenue, receiver of the public money, or any other officer who shall have received public money before it is paid into the Treasury of the United States."

Chief Justice Marshall, in Ex parte Randolph, in construing these words, says:

"The obvious construction of these words is, I think, that they describe persons who hold office under the government, to whose hands the public money comes before it reaches the Treasury."

Undoubtedly, Mr. Dillin, while he was in office, was a collector of the revenue, and falls within the description of the statute. But the words of the Chief Justice, just quoted, are in the present tense. "Persons who hold office under the government." It is not asserted that at the time of the issuance of this writ, as well as at the time of its execution, that Dillin was an officer, but upon the other hand, it is alleged, and not denied, that he held no office at that time, and that he was a private citizen.

Chief Justice Marshall further says that:

"The word 'officer' is retained and is regularly used throughout the section, showing plainly that no other debtor than one who was properly designated by the term 'officer' was contemplated by the act."

Was Mr. Dillin an officer at the time of the issuance of the process and of his arrest? The process, by authority of which he is in prison,

designates him as the "late surveyor of customs for the Port of Nashville, in the state of Tennessee."

It is strenuously insisted by the district attorney that Mr. Dillin had been an officer of the government, and that while an officer of the government he was a defaulter. It may be assumed that this is true, and, in a proceeding against him, no one would deny that he is responsible for the money which he failed to pay to the government, and to the same extent as he would have been had he been continued in office, but as was said by Chief Justice Marshall:

"It is not his responsibility to the United States, but his liability to this particular process which is the subject of inquiry."

In my judgment, these drastic sections were enacted against officers of the government, and were intended to be enforced against them while in office for the purpose of seizing them where they were short in their accounts before they had time to dispose of the ill-gotten money, or had time to abscond. The statute does not reach all public debtors, and has selected especially those to which it was intended, and those are officers named in the act. No others can be brought within its purview. The principles of strict construction which apply to all laws restrictive of common rights forbid it. And I think the rules of the strictest construction should especially be applied in a case like the present, where the party to be imprisoned has been indicted in the courts of the country for his misconduct in office, and it is sought to inflict this additional hardship upon him months after he has become a private citizen.

It seems clear that the petitioner's days of imprisonment under this writ would have no end, if their termination depends upon his paying the amount the government claims, and for the failure to do which he is incarcerated.

Entertaining these views, I am constrained to direct an order discharging the prisoner from further imprisonment under this writ.

I deem it unnecessary to pass upon the other questions raised.